Scott, J.
The fact that one of the jurors impanneled for the trial of the defendant in the court below had been a member of the grand jury which had found the indictment in the case, was clearly a good cause for challenge. But this right of challenge might be waived by the defendant, and, if he had full knowledge of the fact, his failure to make the objection at the proper time, would constitute such waiver, and justify the overruling of a subsequent motion to set aside the verdict on account of this fact. And if the defendant had seen fit, expressly or impliedly, to waive the objection to the juror, inasmuch as the proper time for challenge had passed by, and the jury had been sworn, it was too late for the state to object to proceeding with the trial. At that stage of the proceedings, the defendant had a right to demand such a disposition of the case, either by the verdict of the jury or otherwise, as would bar another prosecution for the same crime. Of this he could not be deprived, at the will of the court or of the prosecuting attorney, by the entry of a nolle prosequi or the discharge of the jury, without an absolute necessity therefor. Such action, taken without his consent, would operate as an acquittal, and be a bar to any further or subsequent prosecution for the same cause. To hold otherwise, .would be to contravene the constitutional guaranty against being twice put in jeopardy for the same offense. Mounts v. *160 The State, 14 Ohio Rep. 295; Baker v. State, 12 Ohio St. Rep. 214; Dobbins v. The State, 14 Ohio St. Rep. 493.
But, there is no doubt, that the jury might have been discharged at the defendant’s instance, or by his consent, without affecting the right of further prosecution on behalf of the state. That the jury might be discharged, with the prisoner’s consent, or at his request (even in a capital case), before any evidence had been offered, was expressly held in the case of the Kinlock, in 1746 (Foster, 27, 28), and the more modern cases, both in England and the United States, on this subject, uniformly affirm, or concede this right of discharging a jury, by consent. And the main, if not the only question arising upon this record is, whether the jury first impanneled and sworn is not shown to have been discharged at the instance, or with the consent of the defendant, or at least as the necessary result of his own voluntary act.
The circumstance which created the apparent embarrassment in the court below, and which finally led to the discharge of the jury, arose from no error of the court, nor was the state responsible for its existence. It arose from the negligence or inadvertence of one of the jurors, who failed, when interrogated at the proper time, to disclose the importtant fact that he had been one of the grand jurors by whom the indictment in the case then about to be tried had been found. If there had been any negligence on the part of counsel, in failing to ascertain this fact before the jury was impanneled and sworn, it was as justly chargeable to the attorneys for the defendant, as to those who represented the state. Both had been, in fact, misled by the silence of the juror when he ought to have responded to inquiries upon the subject. Still the defendant was entitled to a trial by an impartial jury, who had not prejudged the issue to be submitted to them, and he was clearly not disposed to waive any of his rights. Indeed, looking to the whole colloquy which took place between the court and counsel, it is quite' evident that the defendant desired to be regarded as consenting to nothing, *161 which might, in .any respect, prejudice his possible rights in any stage-of the trial; and-that he desired to secure for himself, by objecting to proceeding with the trial, the full right and benefit, in the event of his conviction, of a motion for a new trial, on account of the fact then first disclosed; and at the same time, if possible, to obtain all the chances of an acquittal from the jury then impanneled, by refusing to consent to its discharge. He had a clear right to one fair and legal trial by an impartial jury, but his right to demand two trials, as a prerequisite to a legal conviction and sentence, can not be conceded. Nor can he reasonably be allowed to acquire such an advantage, by occupying, at the same time, two positions, utterly inconsistent with each other. There were but two possible courses of action open to the court; either to proceed with the trial before the jury then impanneled, or to discharge the jury. It was simply impossible not to do either; and a direct and absolute objection to the one, was necessarily a demand for the other. The jury was not discharged, until the defendant’s counsel had been asked in open court, if they objected to proceeding in the trial with the jury then impanneled, and had replied explicitly that they did. The objection thus openly and directly made was (and, under the circumstances, perhaps properly) sustained by the court; and as a necessary and unavoidable result the discharge of the jury followed. This was for the manifest benefit of the party on trial; it was necessary in order to afford him a trial by an impartial and unbiassed jury; and the principle stated in the case we have cited from Foster’s C. C. is of proper application, “ That all general rules touching the administration of justice must be so understood as to be made consistent with the fundamental principles of justice.” The plaintiff in error has no right to complain because his own objection was not overruled. And as the necessary result of its being sustained, must be held to have occurred, at the instance of the defendant below, the discharge of the jury was not without his consent, and there *162 fore did not operate as an acquittal or otherwise bar a further prosecution.
Judgment affirmed.
Brinkerh off, O.J., and Ranney, Wilder, and White, JJ., concurred.